DECISION AND JUDGMENT ENTRY
{¶ 1} This matter comes before the court from the Norwalk Municipal Court wherein appellant, Rhea Dixon, was found guilty of cruelty to animals. For the reasons that follow, we affirm.
 {¶ 2} On June 16, 2005, appellant was charged with cruelty to animals, a violation of R.C. 959.13(A)(1) and a misdemeanor of the second degree. A bench trial commenced on August 2, 2005. Veterinarian Matthew Klingman testified that on March 3, 2005, he examined a horse at the request of the Huron County Humane Society. The horse belonged to appellant and was housed in appellant's barn. Klingman testified that the horse was in poor condition and unlikely to survive. She was very thin and malnourished. Klingman testified that he saw no evidence of a progressing disease. In Klingman's opinion, the horse's condition resulted from her not being properly fed over an extended period of time.
 {¶ 3} Dr. Klingman then read his report of the examination into the record. According to his report, Klingman found the horse lying down in a stall containing an eight to twelve inch manure pack. The horse could only stand up with assistance. No diagnostic procedures were performed due to a lack of finances on appellant's part. The Humane Society authorized symptomatic treatment which included antibiotics, cortisone, anti-inflammatory drugs and vitamin injections. At the request of the Humane Society, Dr. Klingman returned to appellant's premises to check on the horse four days later. The stall conditions were the same and the horse had not responded to the symptomatic treatment. By this time, the horse was unable to stand even with assistance. Because there had been no improvement in the horse's condition and because there were no funds available for diagnostic testing, Dr. Klingman recommended humane euthanasia for the horse. Appellant agreed and Dr. Klingman administered a Phenobarbital solution to the horse intravenously until she died.
 {¶ 4} Janice Strojin testified that she knew appellant through her children. On February 28, 2005, appellant called Strojin and asked her to help with her horse. Appellant told Strojin that her horse could not get up. When Strojin arrived at appellant's barn, she found that the horse was soaking wet and did not want to get up. The barn was cold and the stall was wet, lacking clean bedding or straw. Strojin noted that the horse was underweight and she surmised that the horse was too weak to get up.
 {¶ 5} Robert Slagle testified that he is a volunteer with the Huron County Humane Society. On February 28, 2005, he received a call to help out with a horse at appellant's residence. When he arrived he found the horse on the ground, cold and wet. He testified that "she was in pretty rough shape." With the help of Dr. Klingman, Slagle was able to get the horse to stand. The horse ate a small amount. When Slagle asked appellant if she had any hay for the horse, appellant told him no. Slagel brought the horse some hay later that evening.
 {¶ 6} Appellant's husband, David Dixon, testified that the horse got sick and lost about 250 pounds over a two week period. He testified that when the family noticed that the horse was losing weight they gave her more hay and grain. Appellant produced a receipt for hay dated February 15, 2005. She testified that she purchased hay and grain for the horse subsequent to that date but she did not have receipts for those purchases. She testified that she fed the horse well and that the horse was loved by the family. Appellant testified that the horse's condition was due to illness as oppose to neglect.
 {¶ 7} Appellant was found guilty, fined $300 and sentenced to 90 days in jail. Her jail sentence was suspended on condition that she is not convicted of any crimes for five years and on condition that she make restitution in the amount of $461. Additionally, she was ordered not to possess any horses for five years. Appellant now appeals setting forth the following assignments of error:
 {¶ 8} "1. The trial court committed plain error in considering the expert testimony offered by the state where the same was not stated to a reasonable degree of professional certainty.
 {¶ 9} "2. The trial court erred in convicting Mrs. Dixon where the state failed to prove beyond a reasonable doubt the Mrs. Dixon acted recklessly.
 {¶ 10} "3. The judgment of the trial court is against the manifest weight of the evidence.
 {¶ 11} "4. The trial court committed plain error by considering the hearsay report read into the record."
 {¶ 12} In her first assignment of error, appellant contends that the court committed plain error in admitting the testimony of the state's witnesses. Specifically, appellant contends that the court erred in allowing the state's witnesses to testify regarding the condition of the horse without requiring them to state their opinions "to a reasonable degree of professional certainty."
 {¶ 13} Appellant did not object to the testimony at trial. Absent plain error, appellant's failure to object generally waives the right to appeal the issue. Crim.R. 52(B); State v.Long (1978), 53 Ohio St.2d 91, 97. To find plain error, the court must be able to conclude that but for the admission of the improper evidence, the outcome of the trial would clearly have been different. Long, Id.
 {¶ 14} The decision whether to admit evidence rests within the sound discretion of the court, and as long as the probative value is not substantially outweighed by the prejudicial effect, relevant evidence is admissible. Evid.R. 403.
 {¶ 15} Initially we note that the state did not formerly tender any of their witnesses as expert witnesses. Dr. Klingman testified that he has been a veterinarian for five years. He went to college for eight years, veterinarian school for four years and he completed a one year internship. Dr. Klingman testified that his practice encompasses a variety of species including horses and cows. Under Evid.R. 702(B), Dr. Klingman was "qualified as an expert by specialized knowledge, skill, experience, training, or education" to testify as a veterinarian as to the condition of appellant's horse. Given his qualifications, the state's failure to tender him as an expert was of no consequence and did not create plain error.
 {¶ 16} As to the testimony of Strojin and Slagle, a lay person may give opinion evidence based upon observed facts.American Louisiana Pipe Line Co. v. Kennerk (1957),103 Ohio App. 133. Both witnesses testified as to their observations of the horse and based on those observations, both witnesses testified that in their opinion, the horse had not been properly fed. We find no plain error in the admission of this testimony. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 17} In her second assignment of error, appellant contends that the state failed to prove beyond a reasonable doubt that appellant was reckless. The elements of R.C. 959.13(A)(1), cruelty to animals, are as follows:
 {¶ 18} "No person shall: * * * (1) Torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water;"
 {¶ 19} The required mens rea element for this offense is recklessness.
 {¶ 20} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
 {¶ 21} In this case, Dr. Klingman testified that the horse was malnourished and it appeared that the horse had not been properly fed over an extended period of time. While the horse may have also been sick with an illness, such an illness would have been the result of the horse's longtime neglect. Strojin testified that she asked appellant and her family members if they had been feeding the horse. Appellant claimed her children had been feeding the horse. When Strojin asked the children about feeding the horse they all denied it. Slagle testified that he asked appellant if she had any food for the horse and she said she did not. Based on this evidence, we conclude that a rational trier of fact could reasonably conclude that appellant perversely disregarded, with heedless indifference to the consequences, the known risk of failing to properly feed an animal over an extended length of time. Appellant's second assignment of error is found not well-taken.
 {¶ 22} In her third assignment of error, appellant contends that her conviction is against the manifest weight of the evidence. "Weight of the evidence" refers to the jury's resolution of conflicting testimony. State v. Thompkins,
(1997), 78 Ohio St.3d 380, 387. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387.
 {¶ 23} Appellant contends that there was evidence that the horse's condition was the result of pneumonia. As already discussed above, a veterinarian testified that whether or not the horse was suffering from an illness, her overall condition was caused by neglect. Specifically, the horse was deprived of food for an extended period of time. After reviewing all the evidence in this case, we cannot say that the trier of fact lost its way and created a manifest miscarriage of justice by finding appellant guilty of cruelty to animals. Appellant's third assignment of error is found not well-taken.
 {¶ 24} In her fourth assignment of error, appellant contends that the court committed plain error in allowing Dr. Klingman to read the report of his examination into the record. Appellant contends that the report amounted to inadmissible hearsay. We disagree. Appellant failed to object to the reading of the report and appellant failed to object to the admission of the report as an exhibit.
 {¶ 25} In any event, we cannot find that the outcome of the trial would have been any different had Dr. Klingman not read his report into evidence. A review of the doctor's one page report shows that it mirrors his direct testimony regarding his examination of the horse. Therefore, appellant was not prejudiced. Appellant's fourth assignment of error is found not well-taken.
 {¶ 26} On consideration whereof, the judgment of the Norwalk Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Singer, P.J. Parish, J. concur.